**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SOUNDEXCHANGE, INC.,

     Plaintiff,

v.

ACCURADIO, LLC,

     Defendant.

Case No. _____

**COMPLAINT**

Plaintiff SoundExchange, Inc., ("SoundExchange" or "Plaintiff") files this Complaint for damages against Defendant AccuRadio, LLC ("AccuRadio" or "Defendant") (hereinafter, SoundExchange and AccuRadio shall be collectively referred to as the "Parties"), respectfully showing this Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff SoundExchange is an independent nonprofit organization organized and existing under the laws of the State of Delaware, with its headquarters at 733 10th Street NW, 10th Floor, Washington, DC 20001.

2.     Defendant AccuRadio is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 10 W Hubbard Street, 2D, Chicago, Illinois 60654. It may be served with process through its registered agent Kurt Hanson, 3241 N Wilton Avenue, Chicago, Illinois 60657.

3.     This is a civil action seeking damages for breach of contract and under the Copyright Act, 17 U.S.C. § 101, *et seq.* This Court has original subject matter jurisdiction over Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Additionally, this Court has

subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a)(1) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      This Court has supplemental jurisdiction over SoundExchange's non-federal clams pursuant to 27 U.S.C. § 1367 because SoundExchange's breach of contract claims are formed from the same case and/or controversy and are related to SoundExchange's Copyright Act claims.

5.      Venue is appropriate in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant's principal place of business is located within the Northern District of Illinois and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

## CONDITIONS PRECEDENT

6.      All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## FACTS

7.      SoundExchange is the sole entity in the United States designated by the Library of Congress to collect digital performance royalties from statutory license users, and to distribute those royalties to performing artists and copyright owners.

8.      Specifically, SoundExchange is charged by statute and regulation with administering the statutory license (see, e.g., 17 U.S.C. § 114(g)(3)(A); 37 C.F.R. § 370.4), collecting statutory royalties (see, e.g., 17 U.S.C. § 114(g)(2), 3; 37 C.F.R. § 380.7), and enforcing the terms of the statutory license (see, e.g., 17 U.S.C. § 114(g)(3)(C)).

9.      Pursuant to this authority, SoundExchange collects statutory royalties from television music channels, satellite radio, internet webcasters, and other types of services for transmission of sound recordings, and distributes those royalties to performing artists and copyright owners.

10.     Defendant operates a multichannel internet radio service that provides access to over a thousand pre-developed music channels and access to millions of sound recordings.

A.      **The Statutory and Regulatory Framework**

11.     Section 106 of the Copyright Act grants the owner of a copyright in a sound recording the exclusive rights "to reproduce the copyrighted work in copies or phonorecords" and "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. §§ 106(6), (7).

12.     As an alternative to having every music service negotiate separate licenses with every copyright owner, Congress granted various eligible entities the ability to obtain a "statutory license." 17 U.S.C. §§ 112(e), 114(d)(2) (hereinafter sometimes referred to as a "license" or "statutory license" in the singular, and "licenses" or "statutory licenses" in the plural).

13.     Per the Copyright Act, "[a]ny person who wishes to perform a sound recording publicly by means of a transmission eligible for statutory licensing under this subsection may do so without infringing the exclusive right of the copyright owner of the sound recording … by complying with such notice requirements as the Copyright Royalty Judges shall prescribe by regulation and by paying royalty fees in accordance with this subsection." 17 U.S.C. §114(f)(3)(B)(i).

14.     Thus, the statutory licenses allow eligible entities to render certain digital public performances of copyrighted sound recordings and make related reproductions. The licenses also allow eligible entities to comply with applicable requirements, including the payment of established royalties, to reproduce and publicly perform all commercial sound recordings without fear of copyright infringement. *See, e.g.*, 37 C.F.R. § 380.10.

15.     "[R]easonable rates and terms of royalty payments" under the statutory license are set by the Copyright Royalty Judges in adversarial administrative proceedings that occur every five years. *Id.*, §§ 112(e)(3), 114(f). The "rates and terms" set in proceedings before the Copyright Royalty Judges "distinguish the different types of digital audio transmission services then in operation." *Id.* § 114(f).

16.     In October 1998, Congress passed the Digital Millenium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998), which amended Section 114 and other provisions of the Copyright Act. Among other things, the DMCA put in place a royalty rate standard for the sound recording statutory license. Services are classified as either "eligible nonsubscription transmission" services or "new subscription service[s]," depending on whether they are provided to consumers on a subscription basis. *Id.* § 114(j)(6), (8).

17.     Licensees that utilize the aforementioned statutory licenses must provide SoundExchange monthly royalty payments and Statements of Account for their use of copyrighted sound records. *See, e.g.*, 37 C.F.R. §§ 380.2(b) & 380.3(a).

18.     To the extent Licensees are late delivering a royalty payment, they must pay a fee of "1.5% (or the highest lawful rate, whichever is lower) of the late payment amount per month." For a late Statement of Account, Licensees must pay "1.5 percent of the payment amount associated with the Statement of Account." 37 C.F.R. § 380.2(d).

19.     Applicable regulations also grant SoundExchange the right to audit a Licensee's records to verify the royalty payments. Those audits may be conducted annually and may cover any or all of the preceding three calendar years, however, any given calendar year may only be audited once. 37 C.F.R. § 380.6(b). This audit is binding on all parties. 37 C.F.R. § 380.6(c). Additionally, if there is an underpayment of 10 percent or more, the Licensee must bear the audit's reasonable costs. 37 C.F.R. § 380.6(g).

**B.      AccuRadio's Failure to Make Payments to SoundExchange as Licensee.**

20.     Until 2016, Defendant regularly provided the periodic Statements of Account, Reports of Use, and royalty payments required by the aforementioned statutory license, albeit sometimes untimely.

21.     That changed in 2016, when Defendant's payments slowed and finally stopped in 2018.

22.     On or about February 25, 2020, the Parties entered into that certain Agreement for Payment Plan of Past Due Amounts (the "Payment Plan Agreement").

23.     A true and correct copy of the Payment Plan Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

24.     Defendant failed to make required payments under the Payment Plan Agreement as and when due thereunder.

25.     Subsequently, SoundExchange performed an audit of Defendant's statutory royalty payments for the period of January 1, 2015 – December 31, 2017, through which it identified additional royalties due to SoundExchange.

C.     **The Forbearance Agreement**

26.     On or about June 29, 2023, the Parties entered into that certain Forbearance Agreement, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

27.     As set forth in Recital F of the Forbearance Agreement, the Parties reconciled and agreed that the total amount of $ ▮▮▮▮▮ was owed to SoundExchange as of May 31, 2021 on account of Defendant's failure to make royalty payments and pay other fees to SoundExchange as required under the statutory licenses, including without limitation underpayments discovered as a result of the aforementioned audit, and all late fees (the "Reconciled Amount").

28.     The Forbearance Agreement set forth a down payment requirement and payment schedule for Defendant to satisfy the Reconciled Amount. Specifically, Section 3 of the Forbearance Agreement required that:

> "Commencing on June 30, 2023, and on the first day of each month thereafter for the duration of the Forbearance Period through and including April 1, 2027, AccuRadio will timely remit to SoundExchange (i) $ ▮▮▮▮ upon execution of this Agreement (the "**Initial Down Payment**"), and (ii) monthly payments as set forth on Schedule 1, attached hereto (i.e., totaling $ ▮▮▮▮▮ comprised of $ ▮▮▮▮▮ in aggregate monthly payments plus a single balloon payment of $ ▮▮▮▮ on April 1, 2027 at the conclusion of the Forbearance Period) (the "Forbearance Payments") [.]

29.     In addition to timely remittance of Forbearance Payments, Defendant was also required under Section 7 of the Forbearance Agreement to timely pay SoundExchange all royalty payments and other charges required under the statutory licenses on a monthly basis, as such obligations became due (hereinafter, the "Royalty Payments").

30.     Sections 7 and 11 of the Forbearance Agreement further provide, *inter alia*, that Defendant's failure to fulfill its ongoing Royalty Payments following notice and expiration of the applicable cure period terminates the Forbearance Agreement, and gives rise to

SoundExchange's ability to exercise of all rights and remedies to collect from Defendant any and all outstanding Royalty Payments and the full balance of the outstanding Reconciled Amount.

**D.      Defendant's Default Under the Forbearance Agreement**

31.      Defendant paid the first three (3) months of Royalty Payments that became due under the Forbearance Agreement and the statutory licenses for the months of June, July, and August 2023.

32.      Thereafter, Defendant failed to make the required Royalty Payments as and when due.

33.      Royalty Payments and Statements of Account are due 45 days after the end of the month that transmissions occur.  *See* 37 C.F.R. §§ 380.2(a), 380.3(a).      Therefore, as of December 13, 2023, Defendant's September 2023 payment had become due.

34.      On or about December 13, 2023, SoundExchange sent a letter to Defendant notifying it of Defendant's payment defaults under the Forbearance Agreement and statutory licenses, and demanding payment of all sums due and payable (the "Notice of Default").

35.      A true and correct copy of the Notice of Default is attached hereto as **Exhibit C** and incorporated by reference.

36.      Specifically, the Notice of Default demanded payment in full of all past due Royalty Payments, totaling $███████ as of December 13, 2023, comprised of the following amounts:

| | | |
|---|---|---|
| Past Due Ongoing Royalty Payments | $ | ████[1] |
| Late Fees | $ | |
| Total | $ | ████ |

---

[1]      For transmissions made under the statutory licenses in September 2023, which became due on November 14, 2023.  As of December 13, 2023, payments for transmissions made in October and November were not then due.

37. After SoundExchange's service of the Notice of Default, Defendant failed to remit the required Royalty Payments within the twelve (12) business day cure period afforded to Defendant under Sections 10(g) and 24 of the Forbearance Agreement.

38. Furthermore, Defendant failed to remit an additional $███████ in Royalty Payments to SoundExchange for the periods of October 2023 through April 2024 as they became due from December 13, 2023 to July 18, 2024. AccuRadio has also failed to identify and remit the amount of the Royalty Payments it owes for the month of May 2024, which became due on July 15, 2024, and include late fees accruing through July 18, 2024.

39. As of July 18, 2024, Defendant owes a total of $███████ to SoundExchange for overdue Royalty Payments, comprised of the following amounts, which do not include the May 2024 Royalty Payment that is now due:

| | | |
|---|---|---|
| Past Due Ongoing Royalty Payments | $ | ███████ |
| Late Fees | $ | ███████ |
| Total | $ | ███████ |

40. The foregoing amounts, as well as the unliquidated amounts due for May 2024, continue to accrue statutory late fees as determined by regulation, and additional Royalty Payments and other amounts due under the Forbearance Agreement and statutory licenses may continue to accrue from July 18, 2024 forward.

41. Defendant paid its statutorily-mandated minimum fees for 2024, and is currently continuing to use the statutory license. Defendant continues to transmit digital performances, incurring additional royalties due to SoundExchange.

**COUNT ONE**
(Violation of 37 C.F.R. § 380.2, 37 C.F.R. § 380.3, 37 C.F.R. § 380.10, and 17 U.S.C. § 114(f)(3)(B) – Underpayment of Statutory Royalties)

42.     SoundExchange incorporates by reference paragraphs 1–41 as if fully set forth herein.

43.     The Copyright Act provides a statutory license for certain digital performance of sound recordings, as well as related reproductions to facilitate the licensee's performance of sound recordings. 17 U.S.C. §§ 112(e), 114.

44.     As Defendant chose to rely on that statutory license, it must make Royalty Payments to SoundExchange at the rates set by the Copyright Royalty Judges. 17 U.S.C. §§ 112(e)(6)(A), 114(f)(3)(B).

45.     Defendant made digital audio transmissions pursuant to the statutory license but failed to pay all the royalties it owes for those transmissions according to its own submitted Statements of Account. 37 C.F.R. § 380.2(a), 37 C.F.R. §380.3(a), 37 C.F.R. § 380.10.

46.     Defendant's failure to make all required royalty payments contravenes the provisions of the Copyright Act specifying that the rates determined by the Copyright Royalty Judges are "binding on … entities performing sound recordings" during the period when the rates are in effect (17 U.S.C. § 113(f)(1)(B)), and that services relying on the statutory license must "pay[] royalty fees in accordance with" § 114(f), *id.* § 114(f)(3)(B). Defendant's non-payments also contravene the requirement that a "Licensee must make the royalty payments due under" the regulations to SoundExchange. 37 C.F.R. § 380.2(a).

47.     The cumulative amount of Defendant's underpayment – which harms SoundExchange, as well as the performing artists and copyright owners on whose behalf it collects and distributes royalties – continues to grow with each passing month, along with the

- 9 -

associated late fees under 37 C.F.R. § 380.2(d), and amounts to at least $▮▮▮▮▮▮ plus unliquidated amounts for the May 2024 period, as of July 18, 2024.

48.     SoundExchange is entitled to recover from Defendant all Royalty Payments due, owing, and accruing as of July 18, 2024 in the total amount of $▮▮▮▮▮▮, plus unliquidated amounts for the May 2024 period, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.  This does not include amounts due under the Forbearance Agreement, which is the subject of Count Two.

**COUNT TWO**
(Breach of Contract – Forbearance Agreement)

49.     SoundExchange incorporates by reference paragraphs 1–48 as if fully set forth herein.

50.     The Forbearance Agreement is a valid and enforceable contract between Defendant and SoundExchange.

51.     SoundExchange fully performed its obligations under the Forbearance Agreement.

52.     The Forbearance Agreement obligated Defendant to make ongoing Royalty Payments to SoundExchange as and when due.

53.     On account of Defendant's failure to make Royalty Payments as and when due, Defendant defaulted under the Forbearance Agreement.

54.     SoundExchange provided written notice of such default to Defendant as required under the Forbearance Agreement via the Notice of Default.

55.      Defendant failed to cure the aforementioned default, and following expiration of the applicable cure period under the Forbearance Agreement, SoundExchange became entitled under the Forbearance Agreement to immediately exercise any and all of its rights to collect the

remainder of the past due Royalty Payment obligations as well as any and all other amounts that may be outstanding on account of further royalty payments and/or charges required under the Forbearance Agreement, the statutory licenses, at law, in equity, or otherwise.

56.     Defendant breached the Forbearance Agreement by failing to pay to SoundExchange all amounts due to SoundExchange thereunder, including without limitation, the past due Royalty Payments.

57.     SoundExchange was damaged as a result of the breach of contract described above.

58.     SoundExchange is entitled to recover from Defendant all amounts due, owing, and accruing under the Forbearance Agreement, and applicable law, including but not limited to, the amount due and payable under the Forbearance Agreement as of July 18, 2024 in the total amount of $▮▮▮▮▮▮ on account of the outstanding balance of the Reconciled Amount, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT THREE
### (Replevin)

59.     SoundExchange incorporates by reference paragraphs 1–58 as if fully set forth herein.

60.     The Forbearance Agreement constitutes a valid and binding obligation of Defendant for the benefit of SoundExchange.

61.     SoundExchange has performed all terms and conditions of the Forbearance Agreement.

62.     An "Event of Default" under the Forbearance Agreement is defined as follows:

"...(i) any breach, default or event of default enumerated in the Forbearance Agreement, and/or (ii) any failure to pay any and all royalty payments accrued and outstanding under the Statutory Licenses, that remains uncured following notice and expiration of any applicable cure period as set forth in the Forbearance Agreement."

Ex. B, §1(b).

63.     An "Event of Default" has occurred under the Forbearance Agreement on account of Defendant's failure to pay to SoundExchange all amounts due to SoundExchange thereunder as and when due, including without limitation, the past due Royalty Payments.

64.     The Forbearance Agreement specifically grants SoundExchange a "continuing lien on and security interest in the Collateral," which the Forbearance Agreement defines as "all personal property of [Defendant] (whether now owned or hereafter acquired or arising and wherever located. Ex. B., § 1(a).

65.     Further, Section 5(d) of the Forbearance Agreement states as follows:

At any time after the occurrence of an Event of Default and during the continuance thereof, and without notice to the Grantor, SoundExchange may direct any persons who are indebted to the Grantor on any Collateral consisting of accounts or general intangibles to make payment directly to Sound Exchange of the amounts due. **SoundExchange is authorized to collect, compromise, endorse and sell any such Collateral in its own name or in the Grantor's name and to give receipts to such account debtors for any such payments and the account debtors will be protected in making such payments to SoundExchange.**

(emphasis added).

66.     Additionally, the Illinois Uniform Commercial Code provides that a secured party may take possession of collateral after default. Accordingly, by virtue of Defendant's failure to make payment under the Forbearance Agreement, SoundExchange is entitled to immediate possession of the Collateral.

67.     Upon information and belief, the Collateral has not been taken for any tax assessment, or fine levied by virtue of any law of this state against the property, nor seized under any lawful process, nor held by virtue of any order of replevin.

68.     As a result, SoundExchange requests an Order of Replevin against Defendant for the Collateral provided by the Forbearance Agreement, including without limitation the Collateral located at Defendant's business premises located at 10 W Hubbard Street, Suite 2D, Chicago, Illinois, 60654.

### COUNT FOUR
(Request for Accounting)

69.     SoundExchange incorporates by reference paragraphs 1–68 as if fully set forth herein.

70.     Pursuant to Section 9(f) of the Forbearance Agreement and 37 C.F.R. § 380.6, SoundExchange has the right to "conduct periodic audits of AccuRadio's books and records to ascertain certain amounts owing under the Statutory Licenses. AccuRadio consents to, shall facilitate, and shall not interfere with any such audits that may be conducted by SoundExchange."

71.     The calculations of the monetary amounts and damages sought by SoundExchange in this action are based upon the information supplied by Defendant to SoundExchange.

72.     The accuracy of these amounts cannot be ascertained or confirmed without a concise and full accounting of the digital transmissions by Defendant.

73.     Therefore, SoundExchange requests an accounting from Defendant for payments due beginning June 2021 through the present and the underlying records of digital transmissions for those payments in order to determine the actual amounts due and owing to SoundExchange.

## COUNT FIVE
(Preliminary Injunctive Relief)

74.     SoundExchange incorporates by reference paragraphs 1–73 as if fully set forth herein.

75.     Defendant has breached and continues to breach the Forbearance Agreement as described *supra*.

76.     While Defendant has defaulted on the payments due pursuant to the Forbearance Agreement, it continues to operate its multichannel internet radio service, providing access to over a thousand pre-developed music channels and access to millions of sound recordings.

77.     Each of Defendant's transmissions incurs additional digital performance royalties owed to SoundExchange under the statutory license, which SoundExchange pays to performing artists and copyright owners.

78.     Injunctive relief is reasonably necessary to stop Defendant from abusing the statutory license and incurring further damages throughout the pendency of this litigation, especially as Defendant's past actions indicate that it has no intention of paying the statutorily-mandated royalties.

79.     SoundExchange and the performing artists and copyright owners to whom it distributes royalties will continue to suffer immediate irreparable harm for which it has no adequate remedy at law until Defendant is enjoined from engaging in the foregoing wrongful conduct. Defendant continues to use the statutory license and avail itself of a legal shield to copyright infringement claims, while failing to pay statutorily-mandated royalties as and when they become due.

80.     SoundExchange is therefore entitled to a preliminary injunction (i) enjoining Defendant from utilizing the statutory license while depriving SoundExchange of the statutorily

required royalty payments; and/or (ii) providing SoundExchange reasonably adequate protection in the form of advance monthly payment on account of Defendant's estimated usage of the statutory licenses.

## PRAYER FOR RELIEF

**WHEREFORE**, SoundExchange respectfully requests that the Court grant judgment in its favor and against Defendant, as follows:

(i)    For compensatory damages of not less than $███████, plus unliquidated amounts for the May 202 period, as of July 18, 2024, corresponding to Defendant's underpayment of statutory license fees and associated late fees, plus any and all additional amounts that accrue to be ultimately determined at trial;

(ii)   For compensatory damages for Defendant's breach of the Forbearance Agreement of not less than $██████, plus any and all additional amounts that accrue to be ultimately determined at trial;

(iii)  For an Order of Replevin to be issued in favor of SoundExchange for possession of the Collateral located at Defendant's business premises located at 10 W Hubbard Street, Suite 2D, Chicago, Illinois, 60654;

(iv)   For an Order mandating that Defendant provide an accounting of its digital streams, receipts and disbursements, profit and loss statements, and other financial materials, statements, and books;

(v)    For preliminary injunctive relief against Defendant (i) enjoining AccuRadio from engaging in wrongful conduct by utilizing the statutory license while continuing to deprive SoundExchange of statutorily required royalty payments; and/or (ii) providing SoundExchange reasonably adequate protection in the form of advance

monthly payment on account of AccuRadio's estimated usage of the statutory licenses;

(vi)    For pre-judgment and post-judgment interest;

(vii)   For SoundExchange's costs, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(viii)  For such other and further relief as this Court deems just, proper, and equitable.

Dated: July 19, 2024.                           Respectfully submitted,

**THOMPSON HINE LLP**

*/s/ Micah Fishman*
Ryan Blackney
Illinois Bar No. 6281642
Micah Fishman
Illinois Bar No. 6338965
20 North Clark Street, Suite 3200
Chicago, Illinois 60602
Telephone: 312-998-4240
Facsimile: 312-998-4245
*ryan.blackney@thompsonhine.com*
*micah.fishman@thompsonhine.com*

-and-

Sean A. Gordon
*Pro Hac Vice* Motion Pending
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone:  404-541-2900
Facsimile:   404-541-2905
*sean.gordon@thompsonhine.com*

*Attorneys for Plaintiff SoundExchange, Inc.*